UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINERVA CHAVEZ, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>ALLSTATE NORTHBROOK INDEMNITY COMPANY,<br><br>                              Defendant. | Case No.: 22-cv-00166-AJB-DEB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. No. 121)** |

Presently pending before the Court is Defendant Allstate Northbrook Indemnity Company's ("Allstate") Motion for Summary Judgment. (Doc. No. 121.) Allstate's motion for summary judgment has been fully briefed. (Doc. Nos. 121; 131; 133.) Pursuant to Civil Local Rule 7.d.1, the Court finds the matter suitable for determination on the papers without oral argument and vacates the hearing on Allstate's motion for summary judgment. For the reasons set forth below, the Court **GRANTS** Allstate's motion for summary judgment.

I.     **BACKGROUND**

Plaintiff filed the original complaint against Allstate in this Court on February 4, 2022. (See Doc. No. 1.) On January 3, 2023, the Court granted in part and denied in part

Allstate's motion to dismiss Plaintiff's Complaint, (Doc. No. 33), and on January 13, 2023, Plaintiff filed the operative FAC, (Doc. No. 34). On April 13, 2023, the Court granted in part and denied in part Allstate's motion to dismiss Plaintiff's FAC. (Doc. No. 42.) Plaintiff's single remaining claim is for violation of the implied covenant of good faith and fair dealing. (*See generally id.* (dismissing Plaintiff's California Unfair Competition Law ("UCL") claim).) On June 25, 2024, the Court certified a class of "all California residents who purchased personal automobile insurance from Allstate covering any portion of the time period from March 1, 2020 to June 11, 2021[,]" and appointed Plaintiff Minerva Chavez as class representative. (Doc. No. 83.) Allstate's motion for summary judgment on Plaintiff's remaining claim follows.

### A. Plaintiff's Allstate Private Passenger Automobile Insurance Policy

Plaintiff first purchased a 6-month Private Passenger Automobile ("PPA") insurance policy from Allstate (the "Policy") in the fall of 2019, covering the period of October 26, 2019, to April 26, 2020. (Doc No 121-11 ¶ 2.) Plaintiff subsequently renewed her Policy several times, such that her Policy remained effective through at least October 26, 2023. (*Id.* ¶¶ 7, 18, 26, 31, 33, 41, 48.)

### B. COVID-19 and Allstate's Shelter-In-Place Payback Program

At the onset of COVID-19, on March 4, 2020, California Governor Newsom issued an executive order, proclaiming a State of Emergency. (Doc. No. 121-22 at 2.) On March 19, 2020, he issued a "stay-at-home" order, directing "all individuals living in the State of California to stay at home or at their place of residence" with limited exceptions. (*Id.*)

In response to the stay-at-home order, on April 6, 2020, Allstate announced its Shelter-In -Place Payback ("SIPP") program "to help its personal auto insurance customers in these challenging times." (Doc. No. 121-23 at 2.) In its press release, Allstate stated that its customers would receive "15% of their monthly premium in April and May, [2020,] totaling more than $600 million [nationwide]." (*Id.* at 3.) The day prior to announcing its SIPP program, Allstate submitted a rate filing with the California Department of Insurance ("CDI"), seeking authorization to implement the program. CDI responded that the

California rate filing process did not have a mechanism to permit COVID related refunds, and CDI requested that Allstate withdraw its filing. (Doc. No. 121-12 at 56:1–58:8.)

## C.    CDI Orders Insurers to Provide COVID-19 Premium Relief

One week later, on April 13, 2020, CDI issued Bulletin 2020-3 to all property, casualty, and workers compensation insurers. (Doc. No. 121-26.) Bulletin 2020-3 recognized that reduced driving during the "stay-at-home" order "resulted in fewer accidents, injuries, and fatalities on public highways and roads[,]" and "projected loss exposures of many insurance policies have become overstated or misclassified." (*Id.* at 2.) Accounting for this reduction in risk, CDI ordered insurers to make premium refunds for March and April 2020 to California private passenger automobile insurance holders "as quickly as practicable." (*Id.* at 3.) Bulletin 2020-3 granted "each insurer reasonable flexibility in determining how best to quickly and fairly accomplish the refund of premium to policyholders" and permitted insurers to refund premium without prior approval by CDI if the insurers applied a uniform premium reduction for all policyholders in an individual line of insurance. (*Id.*) It also required insurers to report to the Department of Insurance "an explanation and justification for the amount and duration of any premium refund, and how those measures reflect the actual or expected reduction of exposure to loss." (*Id.* at 4.) As the pandemic continued, on May 15, 2020, and December 3, 2020, CDI issued two additional bulletins, Bulletins 2020-4 and 2020-8, respectively, (*see* Doc. Nos. 121-27; 121-28), which extended the directions and reporting requirements set forth in Bulletin 2020-3 (collectively, "CDI Bulletins"), and ordered insurers to continue providing premium relief through May and June 2020, as well as subsequent months "as conditions warrant." (*See* Doc. Nos. 121-27; 121-28 at 2.)

Following the issuance of the CDI Bulletins, Allstate subsequently provided additional refunds to California customers in 2020 and 2021, by issuing 15% premium refunds for March through May 2020, 7% premium refunds for June through August 2020, 5.5% premium refunds for September through December 2020, and 3.5% premium refunds

for January through March 2021. (Doc. No. 121-12 at 122:3–20, 123:13–17[1]; *see also* Doc. No. 131-5 at 3.) Allstate asserts, and Plaintiff does not dispute, that Allstate returned over $190.5 million in premium to over one million California personal automobile insurance policyholders for the period March 2020 through March 2021. (*See* Doc. No. 121-1 at 12; Doc. No. 131 at 3.)

### D.    CDI's Investigation into Allstate's Premium Relief

On March 11, 2021, CDI Commissioner Ricardo Lara issued Bulletin 2021-03 which found, "based on extensive analysis of data received, the Department's review of this loss data demonstrates the premium relief that insurance companies provided to their policyholders was insufficient, leaving consumers paying inflated premiums while they continue to experience reduced risk of loss." (Doc. No. 121-29 at 2.) Bulletin 2021-03 directed insurance companies to "continue to provide premium relief information to the Department on a quarterly basis" and to justify if no premium was returned. (*Id.* at 5.)

In a similar vein, on October 6, 2021, CDI issued a press release, titled, "Commissioner Lara orders Allstate, Mercury, and CSAA to 'close the gap' on auto insurance refunds owed to drivers who drove less during the pandemic[.]" (Doc. No. 121-31 at 2.) The press release stated that CDI's analysis of data "received directly from auto insurance companies shows these three auto insurance companies have the greatest gap between what they initially refunded drivers, and what they should have refunded, to provide proper premium relief to their policyholders since the start of the COVID-19 pandemic." (*Id.*) Specifically, CDI's analysis "found that from March to September 2020, insurance company groups returned on average 9 percent of auto premiums, but the Department's analysis found they should have refunded nearly double that amount—17 percent—over the seventh month period." (*Id.*) The press release provided Allstate and the

---

[1] Allstate's 30(b)(6) witness, Alexander DeWitt, at one point testified that Allstate provided 7.5% premium relief refunds from June through August 2020. (*See* Doc. No. 121-12 at 122:5–7.) However, he also testified the premium refund for that time period was 7%, (*id.* at 102), and the parties do not dispute that Allstate provided 7% premium refunds for June through August 2020. (*See* Doc. No. 121-1 at 13; Doc. No. 131 at 11.)

other two insurance companies 30 days to respond to CDI prior to facing legal action. (*Id.* at 3.)

On November 5, 2021, CDI issued a follow-up press release, indicating that Allstate, Mercury, and CSAA complied with Commissioner Lara's order to submit additional data to CDI about auto premium refunds provided to customers during the pandemic. (*See* Doc. No. 121-32.) CDI indicated that it would "evaluate the data and determine how much in additional premiums each insurance company owes their policyholders." (*Id.* at 2.) Commissioner Lara expressed that his "goal is to have an accurate and fair determination of what each insurance company's appropriate amount of premium should be." (*Id.*)

In response to CDI's orders, Allstate reports that it made at least fifteen submissions to CDI, supporting the amount of premium it returned through its SIPP program. (Doc. No. 121-1 at 14; *see also* Doc. Nos. 121-16; 121-17; 121-18.) Actuaries within CDI's Rate Regulation Branch, the entity responsible for evaluating insurers' compliance with CDI's bulletins relating to premium relief due to the pandemic, reviewed insurer-submitted data from 2020 to 2023 in response to CDI's orders. (Doc. No. 121-33 at 3 ¶ 4.)

Ultimately, on January 23, 2023, CDI's Deputy Commissioner of the Rate Regulation Branch, Ken Allen, informed Allstate that CDI determined that Allstate's premium relief refunds were sufficient, and that Allstate did not need to return any additional premium to its California personal automobile policy insurance holders. (Doc. No. 121-34 at 4.) Mr. Allen stated that CDI's determination was "based on data and other information submitted to [CDI] by Allstate [], the PPA premium previously returned to its California PPA policyholders, and the methodology utilized by [CDI] to calculate whether insurers returned a sufficient amount of PPA premium to account for the lower risk of loss during the COVID pandemic period[.]" (*Id.*) While CDI established that Allstate's premium relief refunds were sufficient, it found that other insurance companies failed to distribute adequate premium refunds, and required those companies to provide additional premium relief. (*See* Doc. Nos. 121-35; 121-36; 121-37.)

Plaintiff does not dispute that she received Allstate's premium relief payments in 2020 and 2021 under its SIPP program. (Doc. No. 121-1 at 12; Doc. No. 131 at 11.) Rather, Plaintiff asserts "it was far from enough." (Doc. No. 131 at 3.) Plaintiff alleges Allstate failed to issue adequate refunds, and that she and other class members should have received "at least a 30% average refund of paid premiums" to compensate for the windfall Allstate received by individuals staying at home and not driving during the pandemic. (FAC ¶ 4.)

## II.    REQUEST FOR JUDICIAL NOTICE

In support of its motion for summary judgment, Allstate requests judicial notice of eighteen exhibits. (*See* Doc. No. 121-21 ¶¶ 1–18.) Plaintiffs have not objected. Under Federal Rule of Evidence 201, a court may take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court evaluates Allstate's request for judicial notice by grouping the eighteen exhibits in the following categories:

### A.    Government announcements regarding the COVID-19 pandemic (Exhibit 15)

Exhibit 15 is a copy of Executive Order N-33-20 of the Executive Department of the State of California, dated March 19, 2020. (Doc. No. 121-22.)[2] Exhibit 15 is the California "stay-at-home" order issued in response to COVID-19 and signed by California Governor Gavin Newsom. (*Id.*) "The Court may take judicial notice of public records and government documents available from reliable sources, including government websites." *Day v. GEICO Cas. Co*., No. 21-CV-02103-BLF, 2024 WL 251408, at *2 (N.D. Cal. Jan. 23, 2024). Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibit 15. *See id.* (taking judicial notice of "state and federal announcements regarding the COVID-19 pandemic").

/ / /

---

[2] Exhibit 15 is available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20- COVID-19-HEALTH-ORDER.pdf.

22-cv-00166-AJB-DEB

**B.     Allstate's Press Release (Exhibit 16**)

Exhibit 16 is a copy of Allstate's April 6, 2020, press release titled, "Allstate is Providing More Than $600 Million to Auto Insurance Customers Amid Pandemic[,]" which remains accessible on Allstate's website. (Doc. No. 121-23.) "Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotations and citations omitted). Here, the Court finds it proper to judicially notice Allstate's press release, accessible on Allstate's website. (Doc. No. 121-22 ¶ 2); *see also Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1085 (S.D. Cal. 2016) (taking judicial notice of press releases issued by defendant that remain readily available on defendant's website); *see also In re Sorrento Therapeutics, Inc. Sec. Litig.*, No. 20-CV-00966-AJB-DEB, 2021 WL 6062943, at *4 (S.D. Cal. Nov. 18, 2021) (taking judicial notice of company-issued press release but not for the truth of the matters asserted therein).

Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibit 16, but not for the truth of the matters asserted therein.

**C.     California Department of Insurance website pages (Exhibits 17, 18)**

Exhibit 17 is a copy of the "About the Department" page of the CDI website, (Doc. No. 121-24), and Exhibit 18 is a copy of the "Rate Regulation Branch" page of CDI's website, (Doc. No. 121-25). It is appropriate to take judicial notice of information available online if the information "was made publicly available by [a] government entit[y] . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Day*, 2024 WL 251408, at *2. Here, CDI's website is a reliable government agency website, and neither party disputes the authenticity of the CDI website pages. Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibits 17 and 18.

/ / /

/ / /

7

### D.     California Department of Insurance Bulletins (Exhibits 19, 20, 21, 22)

Exhibits 19–22 are copies of CDI's bulletins dated April 13, 2020, May 15, 2020, December 3, 2020, and March 11, 2021, respectively, which are publicly available online. (*See* Doc. Nos. 121-26; 121-27; 121-28; 121-29.) Because the Court "may take judicial notice of public records and government documents available from reliable sources, including government websites[,]" *Day*, 2024 WL 251408, at *2, the Court finds it proper to take judicial notice of these CDI bulletins. *See id.* (taking judicial notice of CDI bulletins); *see also Drawdy v. Nationwide Ins. Co. of Am.*, No. 222CV00271JAMKJN, 2022 WL 3020050, at *1 (E.D. Cal. July 29, 2022) (taking judicial notice of CDI bulletins). Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibits 19–22.

### E.     California Department of Insurance Press Releases (Exhibits 24, 25)

Exhibits 24 and 25 are CDI-issued press releases dated October 6, 2021, and November 5, 2021, respectively, which are publicly available online on CDI's website. (*See* Doc. Nos. 121-31; 121-32.) Because the Court "may take judicial notice of public records and government documents available from reliable sources, including government websites[,]" *Day*, 2024 WL 251408, at *2, the Court finds it proper to take judicial notice of these CDI press releases. *See id.* (taking judicial notice of CDI press releases); *see also In re Outlaw Lab'ys, LP Litig.*, 352 F. Supp. 3d 992, 1006 n.5 (S.D. Cal. 2018) (taking judicial notice of a U.S. Department of Justice press release); *see also DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (taking judicial notice of "government documents, court filings, press releases, and undisputed matters of public record").

Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibits 24 and 25.

### F.     California Department of Insurance Correspondence (Exhibits 23, 27)

Exhibits 23 and 27 are both pieces of correspondence from CDI to Allstate. (*See* Doc. Nos. 121-30; 121-34.) "A court may . . . take judicial notice of self-authenticating

8

documents, including those that bear 'a seal purporting to be that of the United States . . . or a department [or] agency' and 'a signature purporting to be an execution or attestation.'" *Blain v. Liberty Mut. Fire Ins. Co.*, No. 22-CV-00970-AJB-MMP, 2024 WL 948020, at *2 (S.D. Cal. Feb. 12, 2024) (quoting Fed. R. Evid. 902(1)).

Exhibit 23 is a copy of CDI's October 5, 2021, letter from Kenneth B. Schnoll, CDI's General Counsel & Deputy Commissioner, to Allstate titled, "Additional Premium Refunds, Credits, and Reductions in Response to COVID-19 Pandemic." (Doc. No. 121-30.) The letter is signed by Kenneth B. Schnoll. (*Id.*) The Court finds Exhibit 23 to be self-authenticating because the letter is signed by CDI's General Counsel & Deputy Commissioner. *See Blain*, 2024 WL 948020, at *2 (taking judicial notice of the self-authenticating CDI's Settled Order for Liberty Mutual because it was "signed by the Deputy Commissioner of [the California Department of Insurance].")

Exhibit 27 is a CDI-certified copy of a January 23, 2023, email from Ken Allen, Deputy Commissioner of the Rate Regulation Branch at CDI, to Gerald Zimmerman, then Senior Vice President and Deputy General Counsel of Government and Industry Relations at Allstate, with the subject line, "Allstate Northbrook Indemnity Company." (Doc. No. 121-34.) On October 25, 2024, Destiny S. Youn, Custodian of Records at CDI, certified under CDI's seal that the January 23, 2023, email is a true and correct copy from the official records of CDI. (*Id.* at 3.) The Court finds Exhibit 27 to be self-authenticating because CDI's Custodian of Records certified the email correspondence with the CDI seal along with the signature of Destiny S. Youn, the Custodian of Records at CDI. *See See Blain*, 2024 WL 948020, at *2.

Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibits 23 and 27.

### G. Declaration Filed in Different Case (Exhibit 26)

Exhibit 26 is a copy of the June 14, 2023, Declaration of Jack C. Nick filed in support of CDI and Ken Allen's Motion to Quash Subpoena, or in the Alternative, Motion for Protective Order in *Day v. GEICO Cas. Co.*, N.D. Cal. Case No. 2:23-mc-00091-FMO-

RAO, filed on June 20, 2023 under Docket No. 1. (Doc. No. 121-33.) A court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Additionally, declarations filed in connection with another case can be used to support a motion for summary judgment. *See Campbell v. Nat'l Passenger R. Corp.*, No. C05-05434 MJJ, 2008 WL 930992, at *14–15 (N.D. Cal. Apr. 3, 2008) (overruling evidentiary objection of the plaintiff's use of "declarations of witnesses that were taken for the purposes of a different lawsuit" in evaluating summary judgment motion). "However, while the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents are not." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 940 (S.D. Cal. 2024) (internal punctuation and citation omitted).

Because Exhibit 26 is a court filing in a different case and publicly available, the Court **GRANTS** Allstate's request to take judicial notice of the existence of Exhibit 26. *See Reyn's Pasta Bella, LLC,* 442 F.3d at 746 n.6. However, the Court declines to grant judicial notice of the factual allegations included in Jack C. Nick's declaration. *See Wheeler v. Home Depot U.S.A., Inc.*, No. 15-CV-2236-CAB-AGS, 2020 WL 12835895, at *8 (S.D. Cal. Nov. 23, 2020).

### H. Settlement Stipulations (Exhibits 28, 29, 30)

Exhibits 28, 29, and 30 are copies of three different settlement stipulations that have been publicly filed in other cases: Exhibit 28 is a copy of the August 1, 2023 Settlement Stipulation in *In the Matter of the COVID Refund of Liberty Mutual Fire Ins. Co.*, (Doc. No. 121-35); Exhibit 29 is a copy of the April 24, 2023 Stipulation in *In the Matter of the COVID Refund of Mercury Ins. Co. & Cal. Auto. Ins. Co*., (Doc. No. 121-36); and Exhibit 30 is a copy of the May 24, 2023 Settlement Stipulation in *In the Matter of the COVID Refund of Farmers Ins. Exch. and Mid-Century Ins. Co.*, (Doc. No. 121-37).  A court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6. "However, while the authenticity and existence of a

particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents are not." *Esparza*, 723 F. Supp. 3d at 940.

Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibits 28, 29, and 30, but not the veracity of their content.

### I.    Professional Standards Published by Professional Standards Boards (Exhibits 31, 32)

Exhibits 31 and 32 are copies of Actuarial Standard of Practice No. 1 and No. 17, respectively, of the Actuarial Standards Board that are publicly available online. (*See* Doc. Nos. 121-38; 121-39.) Courts may take judicial notice of publicly available standards published by professional standards boards, including actuarial standards of practice. *See e.g., Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 776 n.6 (5th Cir. 2017) (taking judicial notice of the adoption of Actuarial Standard of Practice No. 48); *see also Garcia v. J2 Glob., Inc.*, No. 2:20-CV-06096-FLA (MAAX), 2021 WL 1558331, at *10 (C.D. Cal. Mar. 5, 2021) (taking judicial notice of accounting standards from the Financial Accounting Standards Boards in part because "[c]ourts . . . regularly take judicial notice of published accounting standards.") Because the Actuarial Standard of Practices Nos. 1 and 7 are publicly available and neither party disputes their accuracy, the Court finds judicial notice of Exhibits 31 and 32 to be proper.

Accordingly, the Court **GRANTS** Allstate's request to take judicial notice of Exhibits 31 and 32.

### III.    MOTION FOR SUMMARY JUDGMENT

#### A.    Legal Standard

A court may grant summary judgment when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations,

22-cv-00166-AJB-DEB

pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the nonmoving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the nonmoving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the nonmoving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks, alterations, and citation omitted).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears*

*Holdings Corp.*, 930 F. Supp. 2d 1146, 1159 (C.D. Cal. 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Further, a motion for summary judgment may not be defeated by evidence that is "merely colorable, or is not significantly probative . . . ." *See Anderson*, 477 U.S. at 249–50 (citations omitted); *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006) (same). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

### B.    Implied Covenant of Good Faith and Fair Dealing

Allstate moves for summary judgment on the single remaining cause of action—Plaintiff's implied covenant of good faith and fair dealing claim. (Doc. No. 121.) Plaintiff alleges that Allstate breached the implied covenant by failing to utilize its discretion to return sufficient premiums to California insurance holders in response to the changed circumstances precipitated by the COVID-19 pandemic. (Doc. No. 34 ¶¶ 47–56.) The parties disagree as to whether Plaintiff's insurance policies provided Allstate with discretion to make downward adjustments to premiums based on generalized changed circumstances, or to limit premium to no more than a fair rate of return. (Doc. No. 121-1 at 18–19; Doc. No. 131 at 2, 11.)

"[T]he implied covenant of good faith and fair dealing . . . is based on the contractual relationship between the insured and the insurer." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (citation omitted). The covenant exists "to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). The implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349–50. Rather, the implied covenant "is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live v. City of*

13

*Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (citing 1 Witkin, Summ. of Cal. Law (2003 supp.) Contracts § 743) (emphasis in original). Within this framework, "to establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.'" *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1209 (2009) (quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573–74 (1973)).

### 1. Implied Covenant of Good Faith & Fair Dealing—Withholding of Benefits Analysis

With respect to the first element, "a bad faith claim cannot be maintained unless policy benefits are due . . . [.]" *Waller*, 11 Cal. 4th at 36 (quotation omitted); *see also OneWest Bank v. Houston Cas. Co.,* 676 F. App'x 664, 666 (9th Cir. 2017) (claim for breach of the implied covenant fails absent showing that an insurer "withheld benefits due under the policy"). This is because "[a]bsent that contractual right, . . . the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" *Waller*, 11 Cal. 4th at 36 (quoting *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (1990)). In other words, for Plaintiff's claim to stand, Plaintiff "must tie [Allstate's] alleged discretionary power to a specific contractual provision." *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2022 WL 2135746, at *2 (N.D. Cal. June 14, 2022).

Plaintiff fails to demonstrate how any provision in her Allstate policy either confers Allstate discretion to downwardly adjust premiums in response to generalized changed circumstances due to a pandemic like COVID-19 or grants policyholders the right to limit premium to no more than a fair rate of return. (*See generally* Doc. No. 131); *see also Nissan Fire & Marine*, 210 F.3d at 1103. In fact, Plaintiff rejects that such a requirement exists. (Doc. No. 131 at 22 ("The Court should reject Allstate's argument that Plaintiff's claim must be tied to a specific provision of its auto insurance contract."))[3] The law necessitates

---

[3] Plaintiff appears to mistakenly conflate the need to tie Allstate's discretion to a specific provision of the insurance contract, which could support a finding of breach of the implied covenant, *Day*, 2022 WL

that the Court decline Plaintiff's invitation. This Court has consistently recognized that it is well-settled California law that courts "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*See* Doc. No. 33 at 16 (quoting *Guz*, 24 Cal 4th at 349–50)); *see also Openshaw v. FedEx Ground Package Sys., Inc.*, 576 F. App'x 685, 688 (9th Cir. 2014) (holding implied covenant "protects against one party *interfering* with another party's contract *rights*; it does not obligate a party to help another party" or "waive" its own rights) (emphasis in original)).

As Allstate suggests, there are good reasons why an implied covenant claim must be tied to a specific contractual provision. (Doc. No. 121-1 at 23.) The Court finds the reasoning in the analogous case, *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2022 WL 2135746 (N.D. Cal. June 14, 2022), persuasive. There, the *Day* court stated:

> If an insured could claim that generic economic or environmental circumstances had changed and force a reduction in their insurance premium, then insurance companies could not with any certainty establish insurance rates within the marketplace. Indeed, if Day's theory worked, GEICO too would have the inherent discretion to *increase* her rate in the face of more challenging economic or environmental circumstances for the company. Without a specific contractual provision authorizing this practice, the implied covenant of good faith and fair dealing cannot impose such a duty by itself.

*Day*, No. 21-CV-02103-BLF, 2022 WL 2135746, at *2. The same reasoning holds true here.

---

2135746, at *2, with the proposition that "breach of a specific provision of the contract is not a necessary prerequisite" to a good faith and fair dealing claim. (*See* Doc. No. 131 at 22 (quoting *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 372 (1992)).) Allstate does not argue that that a claim for breach of the implied covenant of good faith and fair dealing requires Plaintiff to prove the breach of a specific contract provision. (Doc. No. 133 at 9.) Accordingly, the Court agrees with Allstate that "Plaintiff's entire digression on this point misses the mark . . . [.]" (*Id.*)

Rather than tethering Allstate's alleged discretionary power to a specific term or provision in the insurance policies, Plaintiff's evidence demonstrating Allstate's "inherent discretion" under its California auto insurance contracts to make downward premium adjustments is Allstate's "own conduct[.]" (*See* Doc. No. 131 at 9 ("Allstate unquestionably had the discretion to adjust premiums and issue premium relief. Its own conduct proves as much."); *id.* at 20 ("Allstate plainly had the discretion under its California auto insurance contracts to make downward premium adjustments in response to the changed circumstances of the COVID-19 pandemic. Allstate's own actions refute any claim to the contrary."); *id.* at 21 ("As a California state manager testified, Allstate knew that it could [make downward premium adjustments] even though it 'wasn't an obligation of a typical insurance contract.'") (quoting Doc. No. 129-2 at 33:13-34:13).)[4]

Plaintiff's circular, conclusory argument fails to carry the day at summary judgment for an implied covenant claim. *See Shirley v. Allstate Ins. Co.*, 392 F. Supp. 3d 1185, 1191 (S.D. Cal. 2019), aff'd, 825 F. App'x 472 (9th Cir. 2020) ("rhetorical questions and conclusory assertions are not enough to survive summary judgment.") That Allstate issued premium relief through its SIPP program does not imply that its discretion to do so originated through contract. While both Plaintiff and Allstate recognize that Allstate may waive its contractual rights under California Civil Code §§ 3268 and 3513 and return credits, savings, and dividends under California Insurance Code §§ 1420 and 1860, such statutory authorization does not demonstrate that Allstate breached the implied covenant of good faith and fair dealing, which "is based on the ***contractual*** relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36 (emphasis added). Additionally, other courts have recognized that insurance companies may issue premium refunds for extra-contractual reasons such as "marketing or competitive purposes." *Roby v. Liberty Mut.*

---

[4] In its Reply, Allstate stipulates that "Allstate's California manager did not testify Allstate 'knew' it had such discretion." (Doc. No. 133 at 7 n.2.) Rather, Allstate asserts that he "testified premium relief 'wasn't an obligation' of the contract, he 'd[id]n't know the specifics of how—or why [Allstate would have been allowed to do this,' and it had never 'been seen within the industry.'" (*Id.* (citing Doc. No. 129-2 at 33:14–34:7).)

22-cv-00166-AJB-DEB

*Pers. Ins. Co.,* No. 20 C 6832, 2022 WL 204610, at *4 (N.D. Ill. Jan. 24, 2022) (dismissing implied covenant claim "[b]ecause [plaintiff] has not pointed to express terms in the policy establishing that Liberty Mutual possessed the contractual discretion to lower premium rates based upon change in overall driving habits" during COVID-19). Here, Allstate asserts, and Plaintiff does not dispute, that Allstate initiated the SIPP program out of goodwill to its customers during a health and economic crisis. (*See* Doc. No. 121-11 at 11, 19; Doc. No. 131 at 12.) Rather than having contractual discretion to issue the premium refunds, CDI ordered insurers to make premium refunds in its bulletins. (*See* Doc. Nos. 121-26; 121-27; 121-28.)

While Plaintiff does not assert that Allstate's discretion to downwardly adjust premiums is tied to any provision in the contract, (*see* Doc. No. 131 at 22), for completeness, the Court will address the only portion of Allstate's insurance policy which explicitly authorizes Allstate to alter a policyholder's premium: the "Changes" provision. (*See* Doc. No. 121-1 at 9.) The "Changes" provision includes two relevant subsections: the "Premium Changes" section and the "Duty to Report Policy Changes" section. The "Premium Changes" section provides:

> The premium for each auto which Allstate agrees to insure [is] based on information Allstate has received from you or other sources. You agree to cooperate with us in determining if this information is correct, if it is complete, and if it changes during the policy period. You agree that if this information changes or is incorrect or incomplete, we may adjust your premium accordingly during the policy period.

(Doc. No. 121-4 at 25.) The "Duty to Report Policy Changes" provision provides, in part: "Your policy was issued in reliance on the information you provided concerning autos and persons insured by the policy." (*Id.*)

Allstate argues that the insurance policy limits premium adjustments to only when Plaintiff reports changes in information concerning autos and persons insured by the policy, rather than grant Allstate discretion to alter premium due to generalized changed circumstances in the environment. (Doc. No. 121-1 at 9.) Conversely, Plaintiff asserts that

the inclusion of "other sources" in the "Premium Changes" section reveals that the purpose of the auto insurance contract as a whole is "to ensure that the premium is commensurate with the risk to the insurer, which, as Allstate notes, may either increase or decrease[,]" and which Plaintiff argues includes reductions in risk caused by the COVID-19 pandemic. (Doc. No. 131 at 27.)

The Court agrees with Allstate that the insurance policy limits premium adjustments to changes in Plaintiff's information concerning autos and persons insured by the policy. In interpreting a contract under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Here, reading the entire "Changes" provision in context "makes clear that [Allstate's] discretionary power to adjust Plaintiff's policy premiums is based on changes in 'information' in Plaintiff's insurance file." *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 840 (N.D. Cal. 2022). That "information" is data or circumstances that a customer provides, "perhaps a new address or correction of existing information—not general changed circumstances like COVID-19." *Id.* The emphasis on "you," the Allstate customer, in both the "Premium Changes" and "Duty to Report Policy Changes" reinforces this interpretation. (*Id.*) The policy states, "***You*** agree to cooperate with us in determining if this information is correct, if it is complete, and if it changes during the policy period." (Doc. No. 121-4 at 25 (emphasis added).) "***You*** agree that if this information changes or is incorrect or incomplete, we may adjust your premium accordingly during the policy period." (*Id.* (emphasis added).) "***You*** agree to cooperate with us in determining if this information is correct . . . [.]" (*Id.* (emphasis added).) Because "[t]he general circumstances of the COVID-19 pandemic are not 'information' that would be provided by Plaintiff to [Allstate], as the 'Changes' section contemplates, . . . [Allstate's] discretionary power to adjust premiums under that provision is not triggered." *See Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 840 (N.D. Cal. 2022) (dismissing implied covenant of good faith and fair dealing claim brought under similar GEICO auto insurance policy); *see also Boobuli's LLC v. State Farm Gen. Ins. Co.*, 712 F. Supp. 3d 1300, 1317–18 (N.D.

Cal. 2024) (granting summary judgment on implied covenant claim where "changes" provision "simply provides discretion for adjustments, and only in the case of changed circumstances for the insured party"); *see also Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032, 1040 (N.D. Ill. 2021) (dismissing breach of implied covenant claim under Illinois law based on "Changes" provision in GEICO insurance policy because the "Changes" provision "clearly relates to plaintiff's specific information underlying her policy[,]" not generalized changed circumstances like a pandemic).

Because no evidence has been proffered showing that Plaintiff's Allstate policies contained an express provision providing Allstate the discretion to reduce premium due to generalized changed circumstances or granting a right to policyholders to limit premium to a fair rate of return, Allstate is entitled to summary judgment of Plaintiff's implied covenant claim. *See OneWest Bank*, 676 F. App'x at 666 ("Because [insured] cannot establish that [insurer] has withheld benefits due under the policy, its implied-covenant claim must fail as a matter of law.")

### 2. Implied Covenant of Good Faith & Fair Dealing—Reasonable Withholding Analysis

Because Plaintiff does not prevail on demonstrating that Allstate withheld benefits due under Allstate's PPA policy, the Court finds that Allstate is entitled to summary judgment on this first ground. Accordingly, the analysis of whether any withholding by Allstate was reasonable is rendered moot.

\* \* \*

The Court has reviewed all evidence submitted in support of, and in opposition to, Defendant's Motion for Summary Judgment. (Doc. Nos. 121; 131; 133.) To the extent this evidence has not been discussed above or is not duplicative of the evidence submitted in relation to Allstate's Motion for Summary Judgment, the Court finds it does not alter the conclusions reached above. For the reasons discussed above, Allstate is entitled to summary judgment as to the breach of the implied covenant of good faith and fair dealing claim. Accordingly, Allstate's Motion for Summary Judgment is **GRANTED**.

22-cv-00166-AJB-DEB

## VII.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Allstate's motion for summary judgment. The Clerk of Court is **ORDERED TO CLOSE** the case.

**IT IS SO ORDERED.**

Dated:  June 25, 2025

Hon. Anthony J. Battaglia
United States District Judge

22-cv-00166-AJB-DEB